United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Max'is Creations Inc., Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| The Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A", Defendants. | ) Civil Action No. 23-20341-Civ-Scola ) ) ) ) |

### Order Granting Application for Preliminary Injunction

This matter is before the Court on the Plaintiff Max'is Creations Inc.'s ("MCINC") *ex parte* application for entry of temporary restraining order, preliminary injunction, and order restraining transfer of assets (the "Application"). (MCINC Appl., ECF No. 7.) MCINC moves for entry of a preliminary injunction against the Defendants, the individuals, partnerships, and unincorporated associations identified on Schedule "A" (collectively the "Defendants"), pursuant to 15 U.S.C. § 1116, 17 U.S.C §§ 502 and 503, 35 U.S.C. §§ 281 and 283, Fed. R. of Civ. P. 65, and the All Writs Act, 28 U.S.C. § 1651(a). The Court has carefully reviewed the Application, the pertinent portions of the record, and is otherwise fully advised in the premises.

The Court convened a hearing on **March 17, 2023**, at which only counsel for MCINC was present and available to present evidence supporting the Application. The Defendants have not formally responded to the Application or made any filings in this case. Because MCINC has satisfied the requirements for the issuance of a preliminary injunction, the Court **grants** the Application for a preliminary injunction. (**MCINC Appl., ECF No. 7.**)

### 1. Background

The following factual background is taken from MCINC's complaint (Compl., ECF No. 1), Application (MCINC Appl., ECF No. 7), and supporting evidentiary submissions and exhibits.

MCINC is a family-owned business that makes and sells high-quality patented mugs and bowls developed by Max Ash, whose mission is to raise awareness and support for otherwise bright and capable children in this country who struggle with learning and attention issues. (J. Ash Decl. ¶¶ 7, 15, ECF No. 7-1.)

MCINC is the exclusive licensee of all rights in and to different federally registered trademark(s) in International Class 21 (collectively the "MCINC Marks"), as shown in composite exhibit 1 to the complaint (Compl. Ex. 1, ECF No. 1-1), including among them: THE MUG WITH A HOOP!, with Registration Nos. 6,869,541 and 4,948,336; THE MUG WITH A GLOVE!, with Registration Nos. 6,869,540; THE SOCCER MUG WITH A GOAL!, with Registration Nos. 6,869,537 and 5,111,526; THE MUG WITH A GOALPOST!, with Registration Nos. 6,869,539 and 5,111,525; MAX'IS CREATIONS M (Stylized/Design), with Registration No. 5,011,855;  MAX'IS CREATIONS, with Registration No. 5,020,853; and THE WORLD WOULD BE BETTER IF WE COULD PLAY WITH OUR FOOD!, with Registration No. 4,992,727. (J. Ash Decl. ¶¶ 15–17, ECF No. 7-1.)

The 5,011,855 MAX'IS CREATIONS M (Stylized/Design), 5,020,853 MAX'IS CREATIONS, and 4,992,727 THE WORLD WOULD BE BETTER IF WE COULD PLAY WITH OUR FOOD! Marks are incontestable. (*Id.* ¶ 18.) The 6,869,541 THE MUG WITH A HOOP!, 6,869,540 THE MUG WITH A GLOVE!, 6,869,537 THE SOCCER MUG WITH A GOAL! and 6,869,539 THE MUG WITH A GOALPOST! Marks have acquired distinctiveness in whole based on five or more year's use, which was claimed and recognized with the United States Patent and Trademark Office under Trademark Act Section 2(f), 15 U.S.C. § 1052(f). (*Id.* ¶ 19.)

MCINC makes and sells high-quality patented mugs and bowls under the MCINC Marks. The MCINC Marks are used in connection with the manufacture and distribution of MCINC's high-quality mugs and bowls. (*Id.* ¶¶ 15, 20.)

MCINC advertises, markets, promotes, and sells its high-quality patented mugs and bowls under the MCINC Marks using photographs that are protected by copyright and registered with the Copyright Office (collectively the "Copyrighted Photographs"). (*Id.* ¶ 41.) MCINC is the exclusive licensee of all rights in and to the Copyrighted Photographs, including the exclusive right to pursue acts of infringement worldwide and retain and recover all proceeds thereof. (*Id.* ¶ 42.) MCINC's licensed photographs are duly registered with the Register of Copyrights as visual materials, namely VA 2-026-049 "Group of Registration Photos, Max'is Creations 2015 Mugs, published Feb.15, 2015-Jul.29, 2015; 14 photos," and VA 2-026-058 "Group Registration photos, Max Photos, published June 13, 2014; 2 photos." True and correct copies of Copyright Certificates of Registration and the photographs they apply to are attached as composite exhibit 2 to the complaint (Compl. Ex. 2, ECF No. 1-2). (J. Ash Decl. ¶¶ 41–43, ECF No. 7-1.)

MCINC's mugs and bowls utility configuration and design features are protected under different registered and valid utility and design patent(s)  with

the United States Patent and Trademark Office (collectively the "MCINC Patents"), including among them: 9,375,106, "BOWL/MUG WITH A FIGURINE FOR PLAYING WITH FOOD"; D723,336, "MUG WITH BASKETBALL HOOP"; D755,015, "MUG WITH BASEBALL GLOVE"; D760,546, "HOCKEY MUCG WITH A NET"; D760,547, "FOOTBALL MUG WITH A GOAL POST"; and D763,041, "SOCCER MUG WITH A GOAL." MCINC is the exclusive licensee of all rights in and to the MCINC Patents, including the exclusive right to pursue acts of infringement worldwide and retain and recover all proceeds thereof. True and correct copies of U.S. Utility and Designs Patents Registrations are attached as composite exhibit 3 to the complaint (Compl. Ex. 3, ECF No. 1-3). (J. Ash Decl. ¶¶ 47–50, ECF No. 7-1.)

     MCINC alleges that the Defendants, through e-commerce stores operating via Internet marketplace platforms under their seller identification names identified on Schedule "A" to the complaint (the "Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing or using what MCINC has determined to be counterfeits, infringements, reproductions and/or colorable imitations of one or more of the MCINC Marks, the Copyrighted Photographs, and the MCINC Patents. (*Id.* ¶¶ 56–60; J. Rothman Decl. ¶¶ 8, 11–13, ECF No. 7-2.)

     The Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of one or more of the MCINC Marks, the Copyrighted Photographs and the MCINC Patents. (J. Ash Decl. ¶¶ 46, 51, 62, ECF No. 7-1.)

     MCINC investigated the promotion and sale of counterfeit and infringing versions of MCINC's products by the Defendants and to obtain the available payment account data for receipt of funds paid to the Defendants for the sale of counterfeit and infringing products through the Seller IDs. (J. Ash Decl. ¶¶ 55–58, ECF No. 7-1; J. Rothman Decl. ¶ 11, ECF No. 7-2.)

     MCINC or someone under its supervision accessed the e-commerce stores operating under the Defendants' Seller IDs. MCINC or someone under its supervision created detailed web page captures and images of the products using one or more of the MCINC Marks, the Copyrighted Photographs, and the MCINC Patents offered for sale by the Defendants. (J. Ash Decl. ¶¶ 57, 59, 60, ECF No. 7-1; J. Rothman Decl. ¶¶ 11–13, ECF No. 7-2.) Test purchases were placed for certain products – all bearing or using counterfeits and infringements of one or more of the MCINC Marks, the Copyrighted Photographs, and the MCINC Patents at issue in this action – and requested that each product be shipped to addresses in the United States. (J. Ash Decl. ¶¶ 74, 75, ECF No. 7-1.)

MCINC or someone under its supervision reviewed and visually inspected the products and determined the products were non-genuine, unauthorized versions of MCINC's products. (*Id.* ¶¶ 65, 67, 75.)

On January 27, 2023, MCINC filed its complaint (Compl., ECF No. 1) against the Defendants for federal trademark infringement (Count One), false designation of origin (Count Two), common law unfair competition (Count Three), common law trademark infringement (Count Four), copyright infringement (Count Five), and patent infringement (Count Six). On January 30, 2023, MCINC filed its *ex parte* application for entry of temporary restraining order, preliminary injunction, and order restraining transfer of assets (the "Application"). (MCINC Appl., ECF No. 7.)

On February 7, 2023, the Court issued an order granting MCINC's *ex parte* application for entry of temporary restraining order and setting hearing on MCINC's requested preliminary injunction for February 16, 2023. (ECF No. 12.) MCINC also moved for, and the Court authorized, alternate service of process on the Defendants. (ECF Nos. 6 and 11.) On February 15, 2023, and then on March 2, 2023, the Court granted MCINC's motions to continue the preliminary injunction hearing and to extend the temporary restraining order until the date of the continued hearing to allow MCINC time serve all the Defendants. (ECF Nos. 29, 36.) The hearing was held on March 17, 2023. Prior to the hearing, MCINC provided the Defendants with notice of its *ex parte* application for entry of temporary restraining order, preliminary injunction, and order restraining transfer of assets and copies of the Court's February 7, 2023, order via electronic mail ("e-mail") to each Defendant's corresponding e-mail address(es) and via website posting. (ECF Nos. 26, 31–34, 38.)

### 2. Legal Standard

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

### 3. Analysis

The Court finds that the declarations and evidence submitted in support of MCINC's Application, as well as the evidence presented at the preliminary injunction hearing, support the following conclusions of law.

First, the Court concludes that MCINC has a strong probability of proving at trial that consumers are likely to be confused by the Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing or using counterfeits, reproductions, or colorable imitations of one or more the MCINC Marks, the Copyrighted Photographs, and the MCINC Patents, that the products the Defendants are selling and promoting for sale are copies of MCINC's products that bear or use copies of the MCINC's intellectual property, and that the infringement of the trademarks, copyrights, and patents will likely cause MCINC to suffer immediate and irreparable injury if a preliminary injunction is not granted.

Second, the following specific facts, as set forth in MCINC's Complaint, the Application, and accompanying declarations, as well as the evidence presented at the preliminary injunction hearing, demonstrate that immediate and irreparable loss, damage, and injury will result to MCINC and to consumers because it is more likely true than not that: a) the Defendants own or control e-commerce stores via Internet marketplace platforms operating under their Seller IDs which advertise, promote, offer for sale, and sell products bearing or using counterfeit and infringing trademarks, copyrights and patents in violation of MCINC's rights; and b) there is good cause to believe that more counterfeit and infringing products bearing or using MCINC's trademarks, copyrights and patents will appear in the marketplace, that consumers are likely to be misled, confused, or disappointed by the quality of these products, and that MCINC may suffer loss of sales for its genuine products.

Third, the potential harm to the Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to MCINC, its reputation, and its goodwill as a manufacturer and distributor of quality products, if such relief is not issued.

Fourth, the public interest favors issuance of the preliminary injunction to protect MCINC's trademarks, copyrights and patents interests and protect the public from being defrauded by the palming off of counterfeit goods as MCINC's genuine goods.

Further, under 15 U.S.C. §1117(a), MCINC may be entitled to recover, as an equitable remedy, the illegal profits gained through the Defendants' distribution and sales of goods bearing or using counterfeits and infringements

of MCINC's trademarks. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, pursuant to 17 U.S.C § 504 (a)(1) and (b), MCINC may be entitled to recover, as an equitable remedy, the actual damages suffered as result of the infringement of the Copyrighted Photographs and any additional profits of the Defendants that are attributable to the infringement and are not taken into account in computing the actual damages or statutory damages pursuant 17 U.S.C § 504(a)(2) and (c). Under the Patent Act, MCINC may be entitled to a compensation for the infringement, no less than a reasonable royalty for the use made of the invention by the Defendants, together with the interest and cost fixed by the Court. *See* 35 U.S.C. § 284. Also, MCINC may be entitled to the extent of the total profit obtained by the Defendants for applying its registered design patents or any colorable imitation thereof, to Defendant's products for purpose of sale or expose for sale. *See* 35 U.S.C. § 289.

In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that the Defendants have violated federal trademark, copyrights and patent laws, MCINC has good reason to believe the Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

### 4. Conclusion

Accordingly, the Court, having considered the Application, and having found good cause, **orders and adjudges** that the Application (**MCINC Appl., ECF No. 7**) is **granted**, and a preliminary injunction is entered under the terms set forth below.

### Preliminary Injunction

(1) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this order are hereby restrained and enjoined until further order of this Court:

(a) From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing or using one or more of the MCINC Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by MCINC; and

(b) From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not

manufactured or distributed by MCINC, bearing and/or using one or more of the MCINC Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using one or more of the MCINC Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant;

(c) From copying, displaying, distributing, or creating derivative works of MCINC's Copyrighted Photographs; and

(d) From making, using, selling, importing and/or offering to sell products that practice the MCINC Patents.

(2) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this order shall immediately discontinue, until further order of this Court, the use of one or more of the MCINC Marks, or any confusingly similar trademarks, the Copyrighted Photographs, and the MCINC Patents, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs. This order is limited to the Defendants' listings using one or more of the MCINC Marks, or any confusingly similar trademarks, the Copyrighted Photographs, and the MCINC Patents, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs, and does not apply to the Defendants' entire e-commerce stores.

(3) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this order shall immediately discontinue, until further order of this Court, the use of one or more of the MCINC Marks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet based e-commerce stores registered, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the Seller IDs.

(4) Each Defendant shall not transfer ownership of the Seller IDs during the pendency of this action, or until further order of the Court.

(5) Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Seller IDs that may have been deleted before the entry of this order.

(6) Upon receipt of notice of this order, the Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform ("AliExpress"), Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Financial Services"), AliPay (China) Internet Technology Co. Ltd., Alipay.com Co., Ltd., and Alipay Singapore E-Commerce Private Limited (collectively, "Alipay"), Amazon Payments, Inc. ("Amazon"), Cloudflare.com ("Cloudflare"), Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, ContextLogic, Inc., which operates the Wish.com website ("ContextLogic"), PayPal, Inc. ("PayPal"), eBay, Inc. ("eBay"), Stripe, Inc. and/or Stripe Payments Company ("Stripe"), Walmart.com ("Walmart"), and their related companies and affiliates shall, to the extent not already done, (i) immediately identify all financial accounts and/or sub-accounts, associated with the Internet based e-commerce stores operating under the Seller IDs, store numbers, infringing product numbers, and/or the e-mail addresses identified on Schedule "A" to the Complaint, as well as any other accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

(7) Upon receipt of notice of this order, the Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms receiving notice of this order, including but not limited to, AliExpress, Ant Financial Services, Alipay, Amazon, Cloudflare, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Stripe, Walmart and their related companies and affiliates, shall further, to the extent not already done, provide MCINC's counsel with all data that details: (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to; (ii) the account

transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained; (iii) the historical sales for the Defendants' listings that are alleged to infringe MCINC's trademarks, copyrights and patents; and (iv) the true identities along with complete contact information including email addresses of all Defendants.

(8) No funds restrained by this order shall be transferred or surrendered by any Defendant, financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, AliExpress, Ant Financial Services, Alipay, Amazon, Cloudflare, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Stripe, Walmart, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

(9) No Defendant whose funds are restrained by this order may transfer said funds in possession of any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, AliExpress, Ant Financial Services, Alipay, Amazon, Cloudflare, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Stripe, Walmart, and their related companies and affiliates restrained by this order to any other financial institution, payment processor, bank, escrow service, money transmitter or marketplace website without the express authorization of this Court.

(10) Any Defendant or financial institution account holder subject to this order may petition the Court to modify the asset restraint set out in this order.

(11) This order shall apply to the Seller IDs, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, websites, or financial accounts which are being used by the Defendants for the purpose of counterfeiting the MCINC Marks and/or unfairly competing with MCINC and/or copying the MCINC's Copyrighted Photographs and/or infringing the MCINC Patents.

(12) This order shall remain in effect until the date for the hearing on the motion for preliminary injunction set forth below, or until such further dates as set by the Court or stipulated by the parties.

## Bond

(13) Pursuant to 15 U.S.C. § 1116(d)(5)(D), 17 U.S.C § 503 (a)(3) and Federal Rule of Civil Procedure 65(c), MCINC shall maintain its previously

posted bond in the amount of **ten thousand dollars and zero cents (\$10,000.00**), as payment of damages to which the Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further order of the Court, and in the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

    **Done and ordered** at Miami, Florida on March 17, 2023.

                                                                                            _____
                                                                                          Robert N. Scola, Jr.
                                                                                          United States District Judge