# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 23-CV-20341-SCOLA/GOODMAN

MAX'IS CREATIONS INC.,

      Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

      Defendants.

_____/

### REPORT AND RECOMMENDATIONS ON PLAINTIFF'S MOTION
### FOR FINAL DEFAULT JUDGMENT AGAINST *CERTAIN* DEFENDANTS

In this intellectual property action, Max'is Creations Inc. ("Plaintiff" or "MCINC")

filed a motion for default judgment against Defendants Nos. "3 to 8, 12, 13, 15, 16, 19, 20,

23, 24, 26, 27, 29 to 45, 47 to 57, 59 to 66, 68, 70 to 85, 87 to 116, 118 to 120, 122, 123, 125 to

136, 138, 144, 152, and 156 to 159, 161 to 189" (collectively, "Defaulted Defendants")[1] in

---

[1]     The Undersigned notes that two Defendants -- Mansa Resales (No. 70) and
Shenzhen Aisiting Technology (No. 156) -- have since been dismissed from this action.
*See* [ECF Nos. 73; 75; 77; 78]. Thus, Plaintiff is not entitled to a default final judgment as
to Defendants Nos. 70 and 156 and they are excluded from the definition of "Defaulted
Defendants" and from the recommendations made in this document. In a supplemental
filing, Plaintiff agreed that Defendants Nos. 70 and 156 should be excluded from the relief
requested in its motion. *See* [ECF No. 84, p. 9 ("Plaintiff is not seeking default judgment

Schedule A of the Complaint. [ECF No. 74, p. 3].[2] The Defaulted Defendants have not filed a response to Plaintiff's motion (or otherwise participated in this lawsuit), and the response deadline has now expired.

Senior United States District Judge Robert N. Scola, Jr. referred this motion to the Undersigned "for a report and recommendations, consistent with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of the Local Magistrate Judge Rules." [ECF No. 76]. As explained below, the Undersigned **respectfully recommends** that the Motion be **granted in part and denied in part**.

## I.      Background

Plaintiff filed a five-count Complaint against all Defendants alleging trademark infringement pursuant to section 32 of the Lanham Act, 15 U.S.C. § 1114, (Count I); false designation of origin pursuant to section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (Count II); common law unfair competition (Count III); common law trademark infringement (Count IV); copyright infringement (Count V); and patent infringement (Count VI). [ECF No. 1].

---

against [Defendants Nos. 70 and 156] and they are excluded from the definition of the Default[ed] Defendants in Plaintiff's Motion.")].

[2]      This Report and Recommendations cites to the page numbers automatically assigned by the Court's CM/ECF system, appearing at the top, right-hand corner in the header of each page.

The Complaint alleges that MCINC is the exclusive licensee of certain federally registered trademarks, including "THE MUG WITH A HOOP!, THE MUG WITH A GLOVE!, THE SOCCER MUG WITH A GOAL!, THE MUG WITH A GOALPOST!, MAX'IS CREATIONS M (Stylized/Design), MAX'IS CREATIONS, and THE WORLD WOULD BE BETTER IF WE COULD PLAY WITH OUR FOOD! (collectively the 'MCINC Marks')." *Id.* at ¶ 24 (capitalization in original); *see also* ¶ 25 (table); [ECF No. 1-1].

MCINC is also the exclusive licensee of all rights in and to "photographs that are protected by copyright and registered with the Copyright Office (collectively the 'Copyrighted Photographs')." [ECF No. 1, ¶¶ 47; 48]. The Copyrighted Photographs "are duly registered with the Register of Copyrights as visual materials[.]" *Id.* at ¶ 49; *id.* (table). "Only the Plaintiff has authorization to advertise, market, or promote goods using the Copyrighted Photographs." *Id.* ¶ 52.

Moreover, MCINC is the exclusive licensee of all rights to the "utility configuration and design features"[3] of certain mugs and bowls which "are protected under different registered utility and design patents with the United Stated [sic] Patent and Trademark Office, including among them the ones listed in the table below (collectively the 'MCINC Patents')." *Id.* at ¶ 53; *see also id.* (table); *id.* at ¶ 54. "Only the Plaintiff has authorization

---

[3]     MCINC specifies in its motion that "[it] only seeks a default judgment based on infringement of the MCINC **design** patents." [ECF No. 74, p. 7 n.3 (emphasis added)].

to import, make, use or sell goods using the MCINC Patents" and it "prominently displays the patent numbers on the packaging for the mugs and bowls, as well on [sic] its different online stores." *Id.* at ¶¶ 57; 58.

The Complaint alleges that Defendants have willfully infringed on Plaintiff's intellectual property rights and engaged in unfair competition through the operation of their e-commerce stores:

107.    Defendants are promoting, advertising, distributing, selling, and/or offering for sale cheap copies of Plaintiff's mugs and bowls in interstate commerce that are counterfeits and infringements of Plaintiff's licensed intellectual property rights (the "Counterfeit Goods") through at least the Internet based e-commerce stores operating under the Seller IDs.

108.    Defendants are using one or more of the MCINC and pirated copies of the Copyrighted Photographs, or substantially similar photographs, in their infringing activities, to initially attract online customers and drive them to Defendants' e-commerce stores operating under the Seller IDs.

109.    Defendants are using identical copies of one or more of the MCINC Marks for different quality goods.

110.    Defendants are pirating the Copyrighted Photographs featuring the high-quality patented mugs and bowls, in which one or more of MCINC Marks can be seen, and using them in their online stores to market the Counterfeit Goods. As a consequence, the MCINC Marks are also being used in relation to Defendants' infringing products, resulting in the infringement of Plaintiff's Marks, false designation of origin of the products, and the misleading of consumers about the source and quality of the products and/or a possible association between Plaintiff and Defendants.

111.    Upon information and belief, at all times relevant hereto, some Defendants are pirating the Copyrighted Photographs and removing the

MCINC Marks featured in the images to evade trademark infringement claims.

***

114.    Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality patented mugs and bowls offered for sale by Plaintiff, despite Defendants' knowledge that they are without authority to use the MCINC Marks.

115.    Defendant's [sic] counterfeit and confusingly similar imitations of Plaintiff's mugs and bowls reproduce the main utility and design features of the MCINC Patents.

***

117.    Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, one Internet marketplace website operating under, at least, the Seller IDs.

118.    In so advertising their stores and products, Defendants improperly and unlawfully use of [sic] one or more of the MCINC Marks and the copyrighted Photographs without Plaintiff's permission.

***

120.    Specifically, Defendants are using counterfeits and infringements of one or more of the MCINC Marks and pirated copies of the Copyrighted Photographs [sic] order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiff's goods and goods sold by Plaintiff's competitors online.

***

125.    Upon information and belief, at all times relevant hereto, Defendants

in this action had full knowledge of Plaintiff's exclusive license of the MCINC Marks, the Copyrighted Photographs and the MCINC Patents, including its exclusive right to use such intellectual property and the goodwill associated therewith.

126.    Defendants' use of one or more of the MCINC Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

127.    Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's licensed intellectual property rights for the purpose of trading on Plaintiff's goodwill and reputation.

*Id.* at ¶¶ 107–11; 114; 115; 117; 118; 120; 125–27.

Plaintiff obtained a Clerk's Default [ECF No. 66] and now seeks the entry of a default judgment against the Defaulted Defendants. [ECF No. 74]. In support of the instant motion, Plaintiff submitted the declaration of its counsel, Joel B. Rothman [ECF No. 74-3]. Plaintiff's motion also relies on the earlier-filed declarations of Mr. Rothman [ECF No. 7-2] and Jennifer Ash, a director of MCINC [ECF No. 7-1]. Additionally, at the Undersigned's direction [ECF No. 79], Plaintiff filed a supplemental memorandum and exhibits in support of the instant motion. [ECF Nos. 84; 84-1–7].

## II.    Applicable Legal Standard

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

6

failure is shown by affidavit or otherwise, the clerk must enter the party's default." A party may then apply to the District Court for a default final judgment. Fed. R. Civ. P. 55(b)(2); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1173 (M.D. Ala. 2008).

A court may not enter a default final judgment based solely on the existence of a clerk's default. *Id.* at 1174. Instead, a court is required to examine the allegations to see if they are well-pleaded and present a sufficient basis to support a default judgment on the causes of action. *Id.* (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[4] Only those factual allegations that are well-pleaded are admitted in a default judgment. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

The decision whether to enter a default judgment "is committed to the discretion of the district court." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). Default judgments are "generally disfavored" because this Circuit has a "strong policy of determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015). In addition to assessing whether the complaint adequately sets forth facts to support the plaintiff's claims, a court considering the entry of a valid default judgment must "have subject-matter jurisdiction over the claims and have personal jurisdiction over the defendant." *Osborn v. Whites & Assocs. Inc.*, No. 1:20-cv-02528, 2021

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

WL 3493164, at *2 (N.D. Ga. May 20, 2021) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 & n.13 (11th Cir. 2009)).

A court may conduct a hearing on a motion for default judgment when, in order "to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2); *see also Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that Rule 55(b)(2) "leaves the decision to hold an evidentiary hearing to the court's discretion").

## III.   Analysis

"[B]efore entering a default judgment, the Court must ensure that it has jurisdiction over the claims and there must be a sufficient basis in the pleadings for the judgment entered." *Tissone v. Osco Food Servs., LLC*, No. 19-CV-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021), *report and recommendation adopted*, No. 19-61358-CIV, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021) (citing *Nishimatsu*, 515 F.2d at 1206).

### a.   Subject-Matter Jurisdiction

The Complaint alleges federal causes of action under the Lanham Act, the Copyright Act, and the Patent Act. [ECF No. 1]. Title 28, United States Code, Section 1331 grants federal courts original jurisdiction over all civil actions "arising under" the laws of the United States. Moreover, the Lanham Act explicitly grants federal courts original

8

jurisdiction over lawsuits alleging violations of its provisions. 15 U.S.C. § 1121(a); *see also Daka Rsch., Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 22-CV-60246, 2023 WL 5310240, at *2 (S.D. Fla. July 14, 2023), *report and recommendation adopted sub nom. Daka Rsch. Inc. v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Amended Schedule "A"*, No. 22-60246-CV, 2023 WL 5289258 (S.D. Fla. Aug. 17, 2023) ("[T]he Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (providing for federal question jurisdiction) and 1338 (governing actions involving patents, copyrights, and trademarks, among others).").

The Court also has supplemental jurisdiction over Plaintiff's common law claims because they "are so related to" Plaintiff's federal law claims "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Therefore, the Court has subject matter jurisdiction over the instant action.

**b.   Personal Jurisdiction**

In addition to subject matter jurisdiction, a court must also have personal jurisdiction over each defendant. "A judgment rendered in the absence of personal jurisdiction is void and without legal effect." *Strange v. Nescio*, No. 20-80947-CV, 2021 WL 8945480, at *1 (S.D. Fla. Mar. 29, 2021) (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012)). For this reason, "when deciding a motion for default judgment, a court

has an affirmative duty to evaluate whether it has personal jurisdiction over the defendant and may raise the issue *sua sponte*." *Id.*

"The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (citation omitted).

<u>**Service of Process**</u>

Service of process is a jurisdictional requirement. "Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). "[W]ithout proper service of process, the district court ha[s] no power to enter a default judgment against the [defendant]." *Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1 (11th Cir. Apr. 21, 2022).

Here, Plaintiff filed a motion seeking authorization for service of process by e-mail and electronic publication pursuant to Federal Rule of Civil Procedure 4(f)(3), which the Court granted. [ECF Nos. 6;11].

The Court authorized Plaintiff to serve Defendants as follows:

(a) MCINC shall serve the Summons, Complaint, and all pleadings, filings, and discovery upon Defendants in this action via e-mail by providing the address for MCINC's designated serving notice website to the Defendants **via the e-mail accounts provided by each Defendant** (i) as part of the data related to its e-commerce store, including customer service e-mail addresses, onsite contact forms, and private messaging application or services, or (ii) via the e-commerce platform e-mail or the designated domain name Registrar's e-mail or domain contact form for each of the e-commerce stores; AND

(b) MCINC shall serve the Defendants **via website posting** by posting a copy of the Summonses, Complaint, and all filings and discovery in this matter on MCINC's designated serving notice website appearing at the following URL: www.sriplaw.com/notice.

[ECF No. 11, p. 3 (emphasis added)].

Thereafter, Plaintiff filed proofs of service indicating that Defendants had been served via e-mail service and via website posting *See* [ECF Nos. 26 (Defendants Nos. 126–36 and 161–89); 31 (Defendants Nos. 53–123); 32 (Defendants Nos. 124, 125, and 137–60); 33 (Defendants Nos. 1 and 21); 34 (Defendants Nos. 29–52); 38 (Defendants Nos. 2–20 and 22–28]. All 189 Defendants have been served in this manner. *Id.*

Because Plaintiff complied with Judge Scola's Order [ECF No. 11] authorizing alternative service of process over Defendants, Plaintiff has effectuated service of process on Defendants in the instant case. *See Leading Edge Mktg. Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-23480-CIV, 2022 WL 16756952, at *2 (S.D. Fla. Nov. 7, 2022), *report and recommendation adopted*, No. 21-23480-CIV, 2022 WL

17144227 (S.D. Fla. Nov. 22, 2022) (finding defendants have been "properly served . . . with the [c]omplaint and summonses via email and Internet publication, consistent with the Court's Order Authorizing Alternate Service"); *Ain Jeem, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306858, at *2 (M.D. Fla. Jan. 27, 2022), *report and recommendation adopted sub nom. Ain Jeem, Inc. v. Individuals*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306874 (M.D. Fla. Feb. 15, 2022) (finding that "[the] [p]laintiff [had] properly effected service on [the] [d]efendants pursuant to Federal Rule of Civil Procedure 4(f)(3)" by complying with the court's order authorizing alternate service of process).

## <u>Amenability to Jurisdiction</u>

Plaintiff's counsel attest that "Defendants are residing and/or operating from the People's Republic of China . . . or other foreign countries and/or redistribute products from sources in those locations." [ECF No. 6-1, ¶ 11]. "The plaintiff has the burden of establishing a *prima facie case* of personal jurisdiction over a nonresident defendant." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also Warner Bros. Ent. Inc. v. Phillips*, No. 6:14-CV-1294-ORL-37, 2015 WL 4590519, at *3

(M.D. Fla. July 28, 2015) ("Even in the default judgment context, as a threshold matter, the plaintiff bears the burden of pleading sufficient facts to make out a *prima facie* case of personal jurisdiction over non-resident defendants.").

In *Leading Edge Mktg., Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, this Court determined that it had "personal jurisdiction over the [d]efendants" because they had been served in accordance with the "Court's order authorizing alternative service" and:

> [the] [d]efendants directly target their business activities toward consumers in the United States, including Florida, and . . . [were] reaching out to do business with Florida residents by operating one or more commercial, interactive internet stores on internet marketplaces where Florida residents [could] purchase products bearing infringing and/or counterfeit trademarks belonging to the [p]laintiff.

No. 23-CV-21333, 2023 WL 3392684, at *2 (S.D. Fla. May 10, 2023).

Similarly here, the Complaint alleges that:

61.     Defendants are engaged in business **in Florida** but have not appointed an agent for service of process.

***

63.     Defendants target their business activities toward consumers throughout the United States, including **within this district**, through the simultaneous operation of commercial Internet based e-commerce stores via the Internet marketplace websites under the Seller IDs.

***

66.     Defendants have purposefully directed some portion of their illegal

13

activities towards consumers **in the state of Florida** through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

***

75. Defendants, through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with Plaintiff's economic interests **in the state of Florida** and causing Plaintiff harm and damage **within this jurisdiction**.

[ECF No. 1, ¶¶ 61; 63; 66; 75 (emphasis added)].

Because "a defaulted defendant is deemed to have admitted the movant's well-pleaded allegations of fact,"[5] these established facts provide a basis for this Court's personal jurisdiction over Defendants. *See TWOWS, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 823CV00139WFJMRM, 2023 WL 2837693, at *2 (M.D. Fla. Apr. 7, 2023) ("[The] [p]laintiff has demonstrated a *prima facie* showing that this [c]ourt has specific personal jurisdiction over the [d]efendants. [The] [d]efendants, alleged to be residing or operating in outside the United States, and are alleged to have committed a tortious act within the state of Florida in satisfaction of Fla. Stat. § 48.193(1)(b).").[6]

---

[5]    *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1339 (11th Cir. 2014).

[6]    *See also, Lead Creation Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 8:23-CV-49-CEH-CPT, 2023 WL 1993971, at *2 (M.D. Fla. Feb. 14, 2023) ("[The] [p]laintiff has demonstrated a *prima facie* showing that this Court has personal jurisdiction over the [d]efendants, who are alleged to be residing or operating in the People's

In sum, Plaintiff has demonstrated that this Court has both subject-matter and personal jurisdiction over the Defaulted Defendants.

### c.    No Possibility of Inconsistent Judgments

Courts have been reluctant to enter default judgments in cases where there are both defaulted and non-defaulted defendants. *See, e.g.*, *Houston Cas. Co. v. Endurance Assurance Corp.*, No. 6:22-CV-1429-RBD-LHP, 2023 WL 2633312, at *2 (M.D. Fla. Mar. 24, 2023) (denying motion for default judgment without prejudice because there was a non-defaulted defendant); *Progressive Mountain Ins. Co. v. Mobile Maint. on the Go, LLLP*, No. 1:20-CV-01665-JPB, 2022 WL 1714859, at *1 (N.D. Ga. Feb. 10, 2022) (declining to enter a default judgment while the declaratory action was pending against other, non-defaulted defendants).

In cases where there are both defaulted and non-defaulted defendants, a court should defer entering a judgment of liability against the defaulted defendant(s) where both the defaulted and non-defaulted defendants are jointly liable. This practice is

---

Republic of China, because the [d]efendants directly target their business activities toward consumers in the United States, including Florida. Specifically, [the] [p]laintiff has provided a basis to conclude that [the] [d]efendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers using one or more [s]eller [a]liases, offer shipping to the United States, including Florida, accept payment in U.S. dollars and have sold the same product that infringes directly and/or indirectly [the] [p]laintiff's patent-in-suit to residents of Florida.").

designed to avoid inconsistent judgments. *See Frow v. De La Vega*, 15 Wall. 552, 82 U.S. 552, 21 L.Ed. 60 (1872).

"Several Circuits, including the Eleventh [Circuit], have found *Frow* applies to situations where defendants are jointly and severally liable, **or have closely related defenses**." *Rodriguez v. Guacamole's Authentic Mexican Food & More, LLC*, No. 11-62527-CIV, 2012 WL 718688, at *2 (S.D. Fla. Mar. 6, 2012) (emphasis added). Even where there is no joint liability, the Eleventh Circuit has stated that it is "sound policy" that "**when defendants are similarly situated**, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits." *Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984) (emphasis added) (citing C. Wright & A. Miller, Federal Practice and Procedure, § 2690, 6 Moore, Federal Practice, ¶ 55.06).

Here, Plaintiff moves for a default final judgment against some (but not all Defendants). It asserts that there is no possibility of inconsistent liability. [ECF No. 74, p. 3 ("Because there are no allegations of joint liability or possibility of inconsistent liability between the Default[ed] Defendants, Plaintiff now moves for entry of a final default judgment."); *id.* at 9 ("There are multiple defendants but no allegations of joint and several liability with respect to the damages alleged and there is no possibility of

16

inconsistent liability between [D]efendants."). The Undersigned has reviewed the docket and agrees with Plaintiff that inconsistent liability is not at issue here.

Schedule A lists 189 Defendants [ECF No. 9-1]. As discussed above, Plaintiff has effectuated service of process on all Defendants by e-mail and electronic publication, as authorized by Judge Scola [ECF No. 11]. Plaintiff has filed proofs of service for all 189 Defendants. [ECF Nos. 26; 31–34; 38]. The docket reflects that no Defendant has filed an answer or otherwise responded to the Complaint [ECF No. 1] and the time for doing so has passed.

Based on the record, there are no Defendants actively litigating this action and there is no possibility of inconsistent liability. *See Max'is Creations, Inc. v. The Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-22920, 2022 WL 104216, at *2 (S.D. Fla. Jan. 11, 2022) (finding "no possibility of inconsistent liability between the [d]efendants" where "[the] [p]laintiff ha[d] stated in its [m]otion that there [were] no allegations of joint and several liability with respect to damages" and **"[t]he [d]efendants remaining in the case ha[d] not appeared and ha[d] defaulted"** (emphasis added)); *Safety Nailer LLC v. Individuals, P'ships , & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-22703, 2021 WL 6197744, at *2 (S.D. Fla. Dec. 30, 2021) (finding "a sufficient basis in the pleading for the default judgment to be entered in favor of [the] [p]laintiff with respect to the defaulting [d]efendants" where "[the] [p]laintiff has stated

17

in its [m]otion that there [were] no allegations of joint and several liability with respect to damages" and **"[the] [d]efendants remaining in the case ha[d] not appeared and ha[d] defaulted"** (emphasis added)).

### d.    Liability

As noted above, the Complaint alleges the following causes of action against all Defendants: (1) trademark infringement in violation of 15 U.S.C. § 1114; (2) false designation of origin in violation of 15 U.S.C. § 1125(a); (3) common law unfair competition; (4) common law trademark infringement; (5) copyright infringement in violation of 17 U.S.C. § 106; and (6) patent infringement under 35 U.S.C. § 271. [ECF No. 1].

Plaintiff is not seeking a default judgment against each Defaulted Defendant on all five counts of the Complaint. Attached to Plaintiff's motion is a damages table [ECF No. 74-2] which lists the names of each Defaulted Defendant, the number of works/marks infringed, and the cause(s) of action on which Plaintiff seeks a default judgment as to that specific Defendant. For instance, for Defendant No. 3 (Shenzhen Shenglong International Trade Co., Ltd.), Plaintiff seeks to recover for the infringement of two (out of six) patents, but not for copyright or trademark infringement. *Id.* at 2.

As part of its supplemental filings, Plaintiff filed an amended damages table [ECF No. 84-1]. Plaintiff states that:

> Upon review of Plaintiff's spreadsheet containing the damages calculations, Plaintiff discovered that for certain Defendants, the damages for trademark infringement were mistakenly calculated twice due to two separate infringements of the same mark. Plaintiff has made the corrections in the table attached as Exhibit 1, and highlighted the cells that were adjusted for the Court's ease.

[ECF No. 84, p. 10]. In this Report and Recommendations, the Undersigned will rely on the amended damages table [ECF No. 84-1].

### Trademark Infringement, False Designation of Origin, and Unfair Competition

Plaintiff alleges claims for trademark infringement (Count I) and false designation of origin (Count II) under the Lanham Act. "[T]he elements of a claim for trademark infringement occur[ ] when a person 'use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' which 'is likely to cause confusion, or to cause mistake, or to deceive.'" *Chanel, Inc. v. Reznik*, No. 07-60493-CIV, 2007 WL 9710719, at *2 (S.D. Fla. Nov. 21, 2007) (quoting *Frehling Enters. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999)). Thus, to prevail on Count I, Plaintiff must show "(1) that its mark has priority and (2) that [ ] [D]efendants' mark is likely to cause consumer confusion." *Id.*

Plaintiff has sufficiently alleged and established each of these elements: (1) Plaintiff's licensed exclusive rights to the MCINC Marks preceded Defendants'

19

infringement; (2) Defendants are selling, offering for sale, and marketing products with the MCINC Marks without Plaintiff's consent or authorization; and (3) the marks used on the products Defendants are selling, offering for sale, and marketing are similar to the Plaintiff's MCINC Marks that they are likely to cause consumer confusion. [ECF No. 1, ¶¶ 18, 21, 24–28, 106, 109-12, 114, 118–20, 125, 126, 141, 142, 149, 150]. Additionally, Plaintiff relies on the declaration of Jennifer Ash, a director of MCINC, to support the allegations of Defendants' infringing activities. *See* Ash Declaration [ECF No. 7-1, ¶¶ 8, 10, 18, 19, 22, 23, 25-27, 28, 30, 31-35, 37-40, 56, 57, 59, 60, 63-65, 67, 68, 70-73, 75, and 89-91]. In its supplemental filings, Plaintiff included screenshots of the Defaulted Defendants' products on their e-commerce stores. [ECF Nos. 84-2; 84-3]. Accordingly, Plaintiff is entitled to a default judgment on its trademark infringement claim (Count I).

"The elements of a claim for false designation of origin are: '(1) that the plaintiff had enforceable trademark rights in the mark or name[ ] and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two.'" *Volkswagen Grp. of Am., Inc. v. Varona*, No. 19-24838-CIV, 2021 WL 247872, at *11 (S.D. Fla. Jan. 25, 2021) (quoting *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1299 (S.D. Fla. 2017)).

The test for liability for false designation of origin is the same as for trademark infringement and counterfeiting, whether the public is likely to be deceived or confused

by the similarity of the subject marks. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992). As already noted, Plaintiff's well-pled allegations establish its exclusive licensing rights over the MCINC Marks and there is a likelihood of consumer confusion due to Defendants' use of the MCINC Marks. [ECF No. 1, ¶¶ 106, 109-12, 114, 118–20, 125, 126, 141, 142, 149, 150]. Thus, Plaintiff is entitled to a default judgment on its false designation of origin claim (Count II).

Plaintiff has also alleged common law causes of action for unfair competition (Count III) and trademark infringement (Count IV). "[T]he Florida common law trademark infringement and unfair competition analysis is essentially the same as the federal trademark infringement analysis." *Colonial Van Lines, Inc. v. Colonial Moving & Storage, LLC*, No. 20-CIV-61255-RAR, 2020 WL 6700449, at *2 (S.D. Fla. Oct. 20, 2020) (citing *Marine v. Black Fin Yacht Corp.*, No. 8:15-CV-1210-T-27AEP, 2016 WL 5106948, at *5 (M.D. Fla. Sept. 20, 2016)). Because Plaintiff has shown it is entitled to a default judgment in its favor on its federal trademark infringement claim, it is also entitled to a default judgment in its favor on its common law trademark infringement and unfair competition claims.

In sum, Plaintiff is entitled to a default judgment in its favor on its federal trademark infringement and false designation of origin claims and its common law claims of unfair competition and trademark infringement as to those Defaulted

Defendants listed in the amended damages table [ECF No. 84-1] as having violated the MCINC Marks.

## Copyright Infringement

Plaintiff also seeks to recover for copyright infringement. Plaintiff states that "[it] is the **owner** of U.S. copyright registrations for the photographs it uses to market its products." [ECF No. 74, p. 12 (emphasis added)]. But its Complaint alleges that it is the exclusive licensee of these photographs. [ECF No. 1, ¶ 48 ("Plaintiff is the exclusive licensee of all rights in and to the Copyrighted Photographs, including the exclusive right to pursue acts of infringement worldwide and retain and recover all proceeds thereof.")]. In any event, Plaintiff has standing to bring its claim for copyright infringement. *See Dish Network L.L.C. v. Fraifer*, No. 8:16-CV-2549-T-60CPT, 2020 WL 1515938, at *9 (M.D. Fla. Jan. 31, 2020), *report and recommendation adopted*, No. 8:16-CV-2549-60CPT, 2020 WL 1512090 (M.D. Fla. Mar. 30, 2020) ("Under the Act, copyright owners and exclusive licensees may enforce a copyright." (citing 17 U.S.C. § 501(b)).

Plaintiff notes that the copyrights are presumptively valid because the registration certificates were issued before or within five years of the first publication. [ECF No. 74, p. 12 (citing 17 U.S.C. § 410(c); *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991))]. It further states that it has "produced documents

22

showing [the Defaulted] Defendants . . . copied the entirety of Plaintiff's Works. (Ash Decl. ¶ 66, DE 7-1; *see also* Exhibit 3)." [ECF No. 74, pp. 12–13].

"To establish [a] claim for copyright infringement, [the] [p]laintiff must show (1) that he own[s] a valid copyright in the photograph, and (2) that [the] [d]efendant copied original elements of those photographs." *Markos v. Yacht Charters of Miami.com, LLC*, No. 19-22284-CV, 2019 WL 8989936, at *2 (S.D. Fla. Oct. 2, 2019), *report and recommendation adopted*, No. 19-22284-CIV, 2019 WL 8989935 (S.D. Fla. Oct. 23, 2019) (citing *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000)). In *Markos*, this Court determined that:

> "[The] [p]laintiff successfully pled these factors, alleging that he registered the photograph at issue with the Register of Copyrights on November 3, 2016, and that [the] [d]efendant subsequently used this photograph on [its] website without license or permission to do so. Thus, he [was] entitled to default judgment on his copyright infringement claim."

*Id.* (footnote omitted).

Similarly here, the well-pled allegations of Plaintiff's Complaint establish the validity of the Copyrighted Photographs and Plaintiff's exclusive licensing rights. *See* [ECF No. 1, ¶¶ 48–49; 52; 174–75]. The Complaint alleges that "Defendants directly infringed Plaintiff's licensed exclusive rights in its copyright registered advertising and marketing photographs under 17 U.S.C. § 106." and "copied, displayed, and distributed Plaintiff's licensed Copyrighted Photographs and/or prepared derivative works based

upon Plaintiff's licensed Copyrighted Photographs in violation of Plaintiff's licensed exclusive rights under 17 U.S.C. § 106(1), (2) and/or (5)." *Id.* at 176–77.

Plaintiff also relies on paragraphs 9, 42, 43, 46, and 66 of the Ash Declaration to support this cause of action. Finally, Plaintiff's supplemental filings [ECF Nos. 84-2; 84-3] include screenshots of the subject photographs appearing on the e-commerce stores of those Defaulted Defendants listed in Plaintiff's amended damages table [ECF No. 84-1] as having infringed on the subject photographs.

Plaintiff has sufficiently pleaded all elements of a copyright infringement claim and is therefore entitled to default judgment as to those Defaulted Defendants listed as having infringed on the subject photographs.

## Patent Infringement

Under the Patent Act, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). In the instant case, "Plaintiff only seeks a default judgment based on [the] infringement of the MCINC *design* patents." [ECF No. 74, p. 7 n.3 (emphasis added)].

This Court has explained that:

A design patent is infringed when, "during the term of a patent for a design, without license of the owner" a defendant "(1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to

which such design or colorable imitation has been applied." 35 U.S.C. § 289. "Determining whether a design patent is infringed is a two-step process. First, when appropriate, the design patent's claims are construed. Second, the patented design is compared to the accused device." *Pride Family Brands, Inc. v. Carl's Patio, Inc.*, 992 F. Supp. 2d 1214, 1223–24 (S.D. Fla. 2014) "The 'ordinary observer' test is the sole test for determining whether a design patent has been infringed." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1129 (Fed. Cir. 2019) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008)). Under this test, "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528, 14 Wall. 511, 20 L.Ed. 731 (1871). "Minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Crocs, Inc. v. Int'l Trade Com'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (quoting *Payless Shoesource, Inc. v. Reebok Intern. Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993)) (cleaned up).

*XYZ Corp. v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 22-CV-24022, 2023 WL 2815123, at *2 (S.D. Fla. Apr. 5, 2023) (emphasis added); *see also Shenzhen Changyu Tech. Co. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 21-22138-CIV, 2021 WL 4991242, at *2 (S.D. Fla. Sept. 13, 2021) ("[The] [p]laintiff must demonstrate that the accused product infringes a patented design. First, the Court must perform claim construction on the design patent claims. *See Catalina Lighting, Inc. v. Lamps Plus*, Inc., 295 F.3d 1277, 1285 (Fed. Cir. 2002). Second, the Court must apply the "ordinary observer" test for design patent infringement. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008).").

In cases involving design patents:

> If the resemblance between the two designs is sufficient to deceive the ordinary observer, inducing him/her to purchase one thinking it was the other, then the first one patented is infringed by the other. *Pride Fam. Brands, Inc. v. Carl's Patio, Inc.*, 992 F. Supp. 2d 1214, 1224 (S.D. Fla. 2014) (citation omitted). **A proper comparison may include a side-by-side view of the design patent drawings and the accused products, and minor differences between a patented design and the design of an accused product does not preclude a finding of infringement**. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009).

*Daka Rsch., Inc.*, 2023 WL 5310240, at *3 (emphasis added).

In *Shenzhen Changyu Tech. Co.*, this Court found that the plaintiff had met its burden of establishing design patent infringement liability, in the context of a default final judgment motion, where:

> [t]he well-pleaded factual allegations of . . . [the] [c]omplaint properly contain[ed] the elements for the [patent infringement] claim and [were] admitted by virtue of [the] [d]efendants' defaults. Moreover, the [c]omplaint's factual allegations ha[d] been substantiated by sworn declarations and other evidence and establish[ed] [the] [d]efendants' liability for the claim asserted.

2021 WL 4991242, at *3 (record citations omitted).

Here, the well-pleaded allegations of the Complaint, deemed admitted by Defendants' defaults, establish the infringement of Plaintiff's design patents. The Complaint alleges that:

> 54.    Plaintiff is the exclusive licensee of all rights in and to the MCINC Patents, including the exclusive right to pursue acts of infringement worldwide and retain and recover all proceeds thereof.

26

\*\*\*

56.     The MCINC Design Patents relates to the ornamental designs for a mugs [sic] or bowls with extension from the handle or rim portions that are indicative of various sport games, such as basketball hoops, baseball gloves, hockey nets, football goal posts and soccer nets.

57.     Only [ ] Plaintiff has authorization to import, make, use or sell goods using the MCINC Patents.

\*\*\*

189.    Plaintiff is the exclusive licensee of all rights in and to the MCINC Patents.

[ECF No. 1, ¶¶ 54, 56, 57, 189].

The Complaint further alleges that:

190.    Defendants have infringed and continue to infringe the MCINC Patents either directly or indirectly through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271, by making, using, selling, importing and/or offering to sell infringing products, namely the infringing and counterfeit products sold under one or more of the MCINC Marks.

191.    Defendants infringing and counterfeit products sold under one or more of the MCINC Marks are the same in all material respects.

\*\*\*

193.    Defendants' infringement, contributory infringement and/or inducement to infringe has been willful and deliberate because Defendants have notice of or knew of the MCINC Patents and have nonetheless injured and will continue to injure Plaintiff, unless and until this Court enters an injunction, which prohibits further infringement and specifically enjoins further manufacture, use, sale, importation and/or offer for sale of products

that come within the scope of the MCINC Patents.

*Id.* at ¶¶ 190, 191, 193.

Plaintiff cites to the Ash Declaration to support this cause of action. *See* Ash Declaration [ECF No. 7-1, ¶¶ 9, 47–52, 60, 65–68]. Moreover, as part of its supplemental filings, Plaintiff filed Composite Exhibit 3, which consists of "side-by-side comparisons of the applicable patents and each Default[ed] Defendant's accused products, which demonstrate that Defendants' products infringe the MCINC Patents." [ECF Nos. 84, p. 10; 84-4 (table)].[7] Therefore, Plaintiff has established liability for patent infringement as to the Defaulted Defendants.[8]

In sum, the well-pled allegations in the Amended Complaint, deemed admitted by virtue of the default and bolstered by the sworn declaration of Jennifer Ash and other record evidence, including side-by-side comparisons of MCINC Patents and the infringing products, establish the Defaulted Defendants' liability under the Patent Act.

---

[7] Some Defaulted Defendants (Nos. 41, 64, 79–85, 87–103, 105–110, 187) are missing from Composite Exhibit 3. Nonetheless, Exhibit 2 contains screenshots of all the Defaulted Defendants' e-commerce stores and the Court is able to make visual comparisons between the products on the missing Defendants' e-commerce stores and the corresponding design patent(s). Therefore, it is not necessary for Plaintiff to submit comparison charts for those Defaulted Defendants missing from Composite Exhibit 3.

[8] Plaintiff's amended damages table [ECF No. 84-1] reflects that each Defaulted Defendant has infringed on at least one of the MCINC design patents.

e.      Damages

"Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages." *Gov't Emps. Ins. Co. v. Compass Med. Centers Inc.*, No. 21-CV-23623, 2022 WL 17653816, at *2 (S.D. Fla. Nov. 10, 2022), *report and recommendation adopted*, No. 21-23623-CIV, 2022 WL 17602650 (S.D. Fla. Dec. 13, 2022). Even in the default judgment context, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2688 at 58–59 (3d ed. 1998)).

Here, Plaintiff seeks equitable relief, monetary damages, attorney's fees, and costs. [ECF No. 74]. As discussed below, Plaintiff is entitled to the relief requested.

**<u>Injunctive Relief</u>**

Plaintiff seeks the issuance of a permanent injunction pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, and 35 U.S.C. § 283. [ECF No. 74, pp. 14–15]. It notes that the Court has

already entered a preliminary injunction in this case [ECF No. 44] and "[n]o change has occurred since then[.]" [ECF No. 74, p. 15].

The Lanham Act authorizes the Court to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office[.]" 15 U.S.C. § 1116(a). Generally, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (citation omitted); *see also Betty's Best, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule 'A'*, No. 1:23-CV-22322-KMW, 2023 WL 6171566, at *3 (S.D. Fla. Sept. 21, 2023) (noting that "both the Copyright Act and the Patent Act permit the entry of an injunction to restrain violations of those acts" (citing 17 U.S.C. § 502, 35 U.S.C. § 283)). Moreover, injunctive relief is available even in the default judgment setting[ ] because [the] [d]efendants' failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement absent an injunction." *Animacord Ltd. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-20744, 2022 WL 1109849, at *4 (S.D. Fla. Mar. 24, 2022), *report and recommendation adopted sub nom. Animaccord Ltd. v. Individuals, P'ships, or Unincorporated*

*Ass'ns Identified on Schedule A*, No. 21-20744-CIV, 2022 WL 1102865 (S.D. Fla. Apr. 13, 2022) (internal citation omitted).

To obtain a permanent injunction, Plaintiff must show: (1) irreparable injury; (2) an inadequate remedy at law; (3) that the balance of hardships weigh in favor of issuing an injunction; and (4) that the issuance of an injunction would not disserve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).

All four factors are met here. Plaintiff has shown that the Defaulted Defendants are promoting and otherwise advertising, distributing, selling and/or offering for sale, through their e-commerce stores, goods bearing counterfeit and infringing trademarks bearing one or more of the MCINC Marks, without authorization. Therefore, consumers will continue to be confused by the Defaulted Defendants' unauthorized use of the MCINC Marks. Additionally, so long as the Defaulted Defendants continue their infringing and counterfeiting activities, Plaintiff loses its ability to control the MCINC Marks and will continue to suffer irreparable harm to its reputation and goodwill. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & CO's business reputation and decrease its legitimate sales."); *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (noting that "[g]rounds for irreparable

31

injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of confusion." (citation omitted)).

Plaintiff has also shown no adequate remedy at law because monetary damages alone will not redress the harm to Plaintiff from the Defaulted Defendants' infringement. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290 (S.D. Fla. 2016) ("[The] [p]laintiff has no adequate remedy at law so long as [the] [d]efendants continue to operate the [s]ubject [d]omain [n]ames and [s]eller IDs because [the] [p]laintiff cannot control the quality of what appears to be its products in the marketplace. An award of money damages alone will not cure the injury to [the] [p]laintiff's reputation and goodwill that will result if [the] [d]efendants' infringing and counterfeiting actions are allowed to continue." (record citation omitted)).

The balance of harms also weighs in favor of issuing a permanent injunction. Plaintiff's injury without an injunction outweighs the impact an injunction would have on the Defaulted Defendants. *See Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1264 (S.D. Fla. 2019) (finding that the balance of harms favored the issuance of a permanent injunction where "[the] [p]laintiff face[d] hardship from loss of sales and its inability to control its reputation in the marketplace," whereas "[the] [d]efendants face[d] no hardship if they [were] prohibited from the infringement of [the] [p]laintiff's trademarks, which is an illegal act.").

Lastly, the public interest will not be disserved if the Court were to enjoin the Defaulted Defendants. "[T]he public interest is served by preventing consumer confusion in the marketplace." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) (citing *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996)); [9] *Mantua Mfg. Co. v. Irize Mattress, Inc.*, No. 20-25036-CIV, 2021 WL 3375837, at *5 (S.D. Fla. Feb. 24, 2021) ("The public interest is served by the entry of a permanent injunction in that further confusion and mistake by the public will be prevented.").

In sum, Plaintiff has shown entitlement to permanent injunctive relief. Therefore, the Undersigned respectfully **recommends** that the Court enter a permanent injunction consistent with the terms listed in Plaintiff's proposed final default judgment and permanent injunction [ECF No. 74-6, pp. 1–4].

## Monetary Damages

As noted above, Plaintiff's amended damages table [ECF No. 84-1] identifies the cause(s) of action and the number and nature of infringements on which Plaintiff seeks to hold each Defaulted Defendant liable. The table reflects that Plaintiff seeks to recover

---

[9]     Although *Davidoff & CIE, S.A.* concerned the entry of a preliminary injunction and the instant motion seeks the issuance of a permanent injunction, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987).

$750.00 per design patent, $150,000.00 per copyrighted photograph, and $100,000.00 per trademark. *Id.* The Undersigned will address the requested damages below.

**Trademark Infringement, False Designation of Origin, and Unfair Competition**

The Lanham Act provides multiple remedies for violations of trademark law. In addition to injunctive relief, discussed above, the Lanham Act permits a successful plaintiff "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The Lanham Act also allows for the court-ordered turnover of counterfeit items in a defendant's possession. 15 U.S.C. § 1118.

In certain instances, the Lanham Act provides for the recovery of statutory damages:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
> > (1) **not less than $1,000 or more than $200,000 per counterfeit mark** per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
> >
> > (2) **if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark** per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c) (emphasis added).

34

Here, "Plaintiff elects to recover an award of statutory damages as to the trademark counterfeiting and infringement claims." [ECF No. 74, p. 16]. It notes that "[t]he lack of information regarding Defendants' sales and profits makes statutory damages especially appropriate in default judgment cases like the instant case," *id.* (citing *Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004)), and that the "default [itself] establishes that [the] [Defaulted] Defendants' infringement of Plaintiff's Mark was willful and deliberate." *Id.*

Plaintiff seeks a statutory award of **$100,000 per mark infringed** against the Defaulted Defendants. [ECF No. 74, p. 17]. The amended damages table [ECF No. 84-1] contains a breakdown of the damages sought against those Defaulted Defendants who have infringed on the MCINC Marks, including the number of trademarks infringed by that Defendant.

"The Court has wide discretion to determine the amount of statutory damages." *Animacord Ltd.*, 2022 WL 1109849, at *5 (citing *PetMed Express, Inc.*, 336 F. Supp. 2d at 1219). The Court may award statutory damages even in instances where a plaintiff cannot prove actual damages caused by a defendant's infringement. *See ABS-CBN Corp. v. abscbn-teleserye.com*, No. 17-61051-CIV, 2017 WL 6947726, at *8 (S.D. Fla. Dec. 27, 2017) (noting that "[a]n award of statutory damages is appropriate, because statutory damages

may be elected whether or not there is adequate evidence of the actual damages suffered by [the] plaintiff or of the profits reaped by the [d]efendant").

The amount of statutory damages awarded should be sufficient to compensate the trademark owner *and* deter the defendant and others from infringing on that trademark. *See Green Apple Juice Bar, LLC v. Bay Parc Plaza Mkt., LLC*, No. 22-23295-CIV, 2023 WL 3980245, at *7 (S.D. Fla. May 19, 2023), *report and recommendation adopted*, No. 22-23295-CV, 2023 WL 3971175 (S.D. Fla. June 13, 2023) ("Statutory damages should serve the dual purposes of compensating the plaintiff and sanctioning and deterring infringers." (citing *PetMed Express*, 336 F. Supp. 2d at 1220–21)).

The infringement in the instant case was willful:

> A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" of a plaintiff's intellectual property rights. *Arista Records*, 298 F. Supp. 2d at 1312 (S.D. Fla. 2003). Willful infringement may be inferred where, as here, a defendant is willing to accept a default judgment. *See Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *7 (S.D. Fla., Oct. 18, 2007).

*Sanrio Co. v. Sommer's Ent. LLC*, No. 18-CV-22177, 2019 WL 2010249, at *5 (S.D. Fla. Mar. 21, 2019).

The Undersigned respectfully **recommends** that the Court award Plaintiff the requested $100,000.00 per infringed mark as to those Defaulted Defendants listed on Plaintiff's amended damages table [ECF No. 84-1] as having infringed on one or more of the MCINC Marks. This recommended statutory award will be sufficient to compensate

36

Plaintiff, punish the infringing Defendants, and deter them and others from continuing to counterfeit or otherwise infringe Plaintiff's trademark, consistent with the purpose of 15 U.S.C. § 1117(c). *See Max'is Creations, Inc.*, 2022 WL 104216, at *8 (in case brought by the instant Plaintiff, "award[ing] statutory damages of $100,000.00 against each [d]efendants indicated as trademark infringers . . . for each MCINC Mark infringed"); *Sanrio Co.*, 2019 WL 2010249, at *5 (awarding statutory damages of $100,000.00 against each defendant for the willful and unauthorized use of the plaintiff's mark); *Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1263 (S.D. Fla. 2016) (awarding $100,000.00 in statutory damages per defendant in willful infringement case).

## Copyright Infringement

Under the Copyright Act:

> a successful copyright litigant is entitled to any damage suffered and the infringers' profits or, at the election of the copyright owner, statutory damages. Statutory damages are awarded per copyrighted work infringed between Seven Hundred and Fifty Dollars ($750.00) and Thirty Thousand Dollars ($30,000.00), at the discretion of the Court. 17 U.S.C. § 504(c)(1). Further, if the Court finds that the infringement was willful, it is within the Court's discretion to raise the statutory award to One Hundred and Fifty Thousand Dollars ($150,000.00) per infringed work.

*Sanrio Co* 2019 WL 2010249, at *4 (citing 17 U.S.C. § 504(c)(2)).

Here, "Plaintiff requests the highest award per work for willful infringement, $150,000." [ECF No. 74, p. 18]. Plaintiff contends that "[t]he award is sufficient to compensate Plaintiff, punish the Counterfeit Defendants, and deter Counterfeit

Defendants and others from continuing to infringe Plaintiffs' [sic] copyrights" and cites other cases awarding similar damages. *Id.* at 18–19. Plaintiff's amended damages table [ECF No. 84-1] lists those Defaulted Defendants who infringed on the copyrighted photographs, the number of copyrighted photographs infringed, and the total damages Plaintiff seeks to recover.

The Undersigned respectfully **recommends** that the Court award Plaintiff the requested $150,000.00 per infringed work as to those Defaulted Defendants listed on Plaintiff's amended damages table [ECF No. 84-1] as having infringed on one or more of the copyrighted photographs. *See Max'is Creations, Inc.*, 2022 WL 104216, at *8 (awarding the requested $150,000.00 per work for willful copyright infringement and noting that "[t]his award [was] within the statutory range for a willful violation, and [was] sufficient to compensate [the] plaintiff, punish the [c]opyright [d]efendants, and deter [the] [c]opyright [d]efendants and others from continuing to infringe [the] [p]laintiffs' copyrights").

<u>**Patent Infringement**</u>

The Patent Act provides that:

> a plaintiff in a case involving the unauthorized application or colorable imitation of a patented design on any article for purpose of sale may elect to receive the infringer's "total profit, but not less than $250." 35 U.S.C. § 289. A court may also increase the damages up to three times the amount found or assessed. 35 U.S.C. § 284. Courts have found that willful infringement is grounds for the award of treble damages.

38

*Max'is Creations, Inc.*, 2022 WL 104216, at *9.

"Plaintiff elects to recover a statutory damages award of $250 for each design patent infringement claim, and requests the Court treble the damages to $750 for each infringement." [ECF No. 74, p. 20]. In *Max'is Creations, Inc.*, this Court awarded the same Plaintiff $750.00 per infringement, noting that "[t]his award [was] within the statutory range for a willful violation, and [was] sufficient to compensate Plaintiff, punish the [d]efendants, and deter [d]efendants and others from continuing to infringe Plaintiff['s] design patents." 2022 WL 104216, at *9. Similarly here, the Undersigned respectfully **recommends** that the Court award Plaintiff the requested $750.00 per infringed design patent, as listed in Plaintiff's amended damages table [ECF No. 84-1].

## Attorney's Fees and Costs

Lastly, Plaintiff states that an award of costs and reasonable attorney's fees should be entered pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 505, and 35 U.S.C. § 285. [ECF No. 74, p. 5].

Under the Lanham Act:

when there is "a violation under section 1125(a) . . . the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Moreover, when a violation under section 1125(a) is established, a court may also award attorney's fees "in exceptional cases." *Id.* Meanwhile, section 1117(b), which applies when the case involves willful

39

use of counterfeit marks, requires the court to award reasonable attorneys' fees if the violation consists of "intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1117(b)(1).

The Eleventh Circuit has defined an "exceptional case" under section 1117(a) of the Lanham Act to be "a case that stands out from others, either based on the strength of the litigating positions or the manner in which the case was litigated." *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (internal quotations omitted). *Tobinick* also confirmed that the "exceptional case" fee analysis under the Lanham Act is the same as that under an identically worded fees provision in the Patent Act, 35 U.S.C § 285. *Id.* Moreover, attorneys' fees are still available under section 1117(a) in exceptional cases, even for those plaintiffs who opt to receive statutory damages under section 1117(c) . . . . *See* 15 U.S.C. § 1117(a); *Int'l Watchman, Inc. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 22-24034, 2023 WL 4364027, at *6 (S.D. Fla. Mar. 23, 2023); *Frugality Inc. v. Individuals, Partnerships, & Unincorporated Associations Identified on Schedule "A"*, No. 21-23025, 2022 WL 686243, at *6 (S.D. Fla. Mar. 8, 2022) (citing *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 104–11 (2d Cir. 2012)). Finally, "a case may be deemed 'exceptional' and merit an award of attorneys' fees under the Lanham Act when the defendant disregards legal proceedings and does not appear." *TracFone Wireless, Inc. v. Cabrera*, 883 F. Supp. 2d 1220, 1227 (S.D. Fla. 2012) (collecting cases).

*Simple Minds Ltd. v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*,

No. 23-CV-22219-RAR, 2023 WL 6121901, at *7 (S.D. Fla. Sept. 19, 2023).

Attorney's fees are also available under the Copyright Act. 17 U.S.C. § 505.

"Section 505 of the 1976 Copyright Act, 17 U.S.C. § 505, permits the trial court in its

discretion to award a reasonable attorneys' fee to the prevailing party in a copyright

infringement action." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 832

(11th Cir. 1982). The Eleventh Circuit has stated that:

> The touchstone of attorney's fees under § 505 is whether imposition of
> attorney's fees will further the interests of the Copyright Act, *i.e.*, by
> encouraging the raising of objectively reasonable claims and defenses,
> which may serve not only to deter infringement but also to ensure "that the
> boundaries of copyright law [are] demarcated as clearly as possible" in
> order to maximize the public exposure to valuable works.

*MiTek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842–43 (11th Cir. 1999) (citing *Fogerty*

*v. Fantasy, Inc.*, 510 U.S. 517, 526–27, 114 S. Ct. 1023, 127 L.Ed.2d 455 (1994)).

As noted above, the Defaulted Defendants acted willfully in their infringement of

the MCINC Marks, the copyrighted photographs, and/or the design patents. They failed

to respond to the Complaint or otherwise participate in this action.

This Court has observed that "[c]ourts routinely award attorney's fees and costs

upon a finding of willful infringement under the Lanham Act and the Patent Act." *Max'is*

*Creations, Inc.*, 2022 WL 104216, at *9 (citing *Volkswagen Grp. of Am., Inc. v. Varona*, No. 19-

24838-CIV, 2021 WL 1997573, at *12 (S.D. Fla. May 18, 2021)). In *Max'is Creations, Inc.*, a

case which ended in a default judgment, this Court awarded the instant Plaintiff the full

amount of attorney's fees requested ($36,128.75), finding "[t]he amount and rates . . .

reasonable for the work performed as compared to other similar litigation." *Id.* Plaintiff

was represented by the same law firm and attorneys representing Plaintiff here.

41

In the instant case, Plaintiff seeks an award of $21,462.50 in attorney's fees. Plaintiff filed a declaration from one of its attorneys, Joel B. Rothman, in support of its fee request. [ECF No. 74-3]. In addition to Mr. Rothman's declaration, Plaintiff has submitted detailed billing records, listing the tasks performed by each timekeeper. [ECF No. 74-4].

The billing records reflect $42,925.00 in attorney's fees. However, "Plaintiff believes that half the attorney and paralegal time incurred in this case was related to activities concerning all [ ] Defendants including the Default[ed] Defendants, with the other half related to negotiating resolutions with [D]efendants who contacted Plaintiff through counsel or directly." [ECF No. 74, p. 21]. For this reason, Plaintiff seeks a fee award of half this amount, or $21,462.50.

The Undersigned has reviewed the record and finds the amount requested to be reasonable in light of other similar litigation. *See, e.g., Int'l Watchman, Inc.*, 2023 WL 4364027, at *7 (awarding $42,585.00 in attorney's fees in trademark infringement action brought by the same law firm and attorneys representing Plaintiff in the instant case); *Max'is Creations, Inc.*, 2022 WL 104216, at *9 (awarding $36,128.75 in attorney's fees in case involving the same causes of action, the same Plaintiff, and the same attorneys); *Sharp Shirter Inc. v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 22-CV-61875-RAR, 2023 WL 2868127, at *5 (S.D. Fla. Apr. 10, 2023) (awarding $18,835.00

in attorney's fees against defaulted defendants in willful infringement case brought by same attorneys representing Plaintiff).

Plaintiff also seeks to recover costs, consisting of a $402.00 filing fee. The docket reflects that Plaintiff paid this cost. *See* Docket Text for ECF No. 1 ("Filing fees $ 402.00 receipt number AFLSDC-16275857")]. Therefore, Plaintiff should recover this amount. *See Leading Edge Mktg., Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 23-CV-21333, 2023 WL 5206034, at *7 (S.D. Fla. Aug. 14, 2023) (awarding $402.00 in court costs as part of a default judgment award in willful infringement case); *Int'l Watchman, Inc.*, 2023 WL 4364027, at *7 (same).

Plaintiff further asks that the Court hold the Defaulted Defendants jointly and severally liable for the awarded attorney's fees and costs. [ECF No. 74, p. 22]. In *Max'is Creations, Inc.*, this Court found that Plaintiff's fees and cost award could be assessed "against defendants jointly and severally" where the complaint alleged that:

> [the] [d]efendants [were] causing and contributing "to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for plaintiff's genuine goods," and that they are causing concurrent and indivisible harm to plaintiff and the consuming public by "(i) depriving plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the MCINC Marks, and (iii) increasing plaintiff's overall cost to market its goods and educate consumers via the Internet."

2022 WL 104216, at *9; *see also Sharp Shirter Inc. v. Individuals, P'ships , & Unincorporated*

*Ass'ns Identified on Schedule "A"*, No. 1:22-CV-23468-KMW, 2023 WL 6064810, at *5 (S.D.

Fla. Aug. 30, 2023), *report and recommendation adopted sub nom. Sharp Shirter Inc. v.*

*Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule A*, No. 22-23468-CV, 2023

WL 6064519 (S.D. Fla. Sept. 18, 2023) (finding similar allegations sufficient to support joint

and several liability); *Int'l Watchman, Inc.*, 2023 WL 4364027, at *7 (same).

Similarly here, the Complaint alleges that:

121.    By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.

122.    Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the MCINC Marks, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers via the Internet.

123.    Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

[ECF No. 1, ¶¶ 121-23].

For the reasons discussed above, the Undersigned **respectfully recommends** that

the Court find Plaintiff, as the prevailing party, entitled to an award of **$21,462.50** in

44

reasonable attorney's fees and **$402.00** in costs. The Defaulted Defendants should be held jointly and severally liable for these amounts.

## IV.    Conclusion

For the reasons stated above, the Court should **grant in part and deny in part** Plaintiff's motion. Plaintiff's motion should be granted as to all Defaulted Defendants except Nos. 70 and 156, who were subsequently dismissed and are excluded from Plaintiff's amended damages table [ECF No. 84-1]. The Court should issue a permanent injunction against the Defaulted Defendants, award the requested sums in statutory damages listed in Plaintiff's amended damages table [ECF No. 84-1] (ranging from $750.00 to $953,000.00, and totaling **$21,579,250.00**), and award **$21,462.50** in reasonable attorney's fees and **$402.00** in costs (liability for the fees and costs to be borne jointly and severally).

Plaintiff will provide a copy of this Report and Recommendations to those Defendants who are the subject of its motion in the same manner in which the Court authorized alternative service of process on Defendants. [ECF No. 11]. Plaintiff will file a notice of compliance on CM/ECF by no later than **Wednesday, November 22, 2023**.

## V.    Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with

45

the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on November 13, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record